# GREAT FALLS MANUFACTURING COMPANY. v. WORSTER.

The action of a court of equity is primarily *in personam.*

Where the person of a defendant is within the jurisdiction of the court, he may be enjoined against injuring the real estate of the orators, situated out of the State.

The orators owned a dam extending across the Salmon river, into the State of Maine. The defendant was a citizen of New-Hampshire. *Held,* upon a bill filed for that purpose, that the court had jurisdiction to issue an injunction restraining the defendant from destroying the dam of the orators in Maine.

IN EQUITY. The following case was stated in the bill:

The orators are a corporation established at Great Falls, on Salmon river, in Somersworth, and own five cotton mills there, with suitable machinery, and to enable them to use the mills, they need the water of Salmon river. For this purpose, they have kept up a dam for some years past, across the river, at the outlet of the Three Ponds, so called, partly in Milton, in this county, and partly in Lebanon in the State of Maine, and have thereby accumulated the water in rainy seasons, and have used it in seasons of drought. The respondent, who is a citizen of New-Hampshire, claims an interest in certain tracts of land, some of which are in Milton, and some are in Lebanon, and which are flowed by the water of the pond created by the dam, his rights to which lands are denied by the orators. The respondent has recently destroyed a part of the dam, and threatens to remove the whole of it, so that it shall be no higher than,

as he alleges, it ought to be, and so that it shall not cause the water to flow the lands in which he professes to have an interest.

The bill prays, that he may be enjoined from destroying any part of the abutment, dam, or superstructure, and from intermeddling with it in any way.

The bill contained other allegations, which are at present immaterial, the only question now raised, being, whether the court had jurisdiction to restrain a citizen of this State, from going into another State, and committing acts injurious to the property of the orators situated here.

*S. H. Parker*, and *J. S. Wells*, for the respondent.

The bill should be dismissed for want of jurisdiction. Story's Eq. Pl., 8. The want of jurisdiction cannot be supplied by the parties, nor waived. The dam is not within this State, and consequently the court has no jurisdiction. This appears by the bill.

A question of jurisdiction should be settled before the merits are discussed. *Piscataqua Bridge*, v. *N. H. Bridge*, 7 N. H. Rep., 35. The eastern boundary of New-Hampshire, being the centre of the stream, the dam extends into Maine. The court here can exercise no control over the land in Maine. Confl. of L., 358. The *lex rei sitæ* must prevail. 15 Pick., 156. It will not be contended that the courts in Maine could enjoin the orators from keeping up the dam in this State. Confl. of L., ch. 14 § 545; 6 Cranch, 198; *Bedel* v. *Loomis*, 11 N. H. Rep., 9. In this case the land was in New-Hampshire, and therefore, the court had jurisdiction. 9 Ver. Rep., 411; Stearns on R. A., 58, 59; 3 Wheat., 212. In Maine, a person may be indicted for maliciously pulling down a dam. For such an offence, perhaps he may be punished here, but not if the act be done in Maine. 2 Caines, 8. An offender against the laws of Maine, cannot be punished here. Every nation has exclusive jurisdiction within its own territory. Confl. of L., 19, ch. 2; Cowp., 208; Vattell, book 2, ch. 73, § § 84, 85. But it cannot bind property out of its own limits. Confl. of L., 21; 13 Mass., 4; 3 McCord., 280; 1 J. J. Marshall, 476; Wheat. Inter. Law ch. 2, part 2.

Where the property is out of the jurisdiction, there can be no proceeding *in rem.* 4 Cranch, 247. It is held in 4 T. R., 503, that the jurisdiction of the courts in England does not extend to land in Canada. And such is the case, although the party may reside here. 15 Pick., 156 ; 6 Hill, 82 ; 1 Ch. Eq. Dig., 589 ; 6 Madd., 16 ; Comfl. of L., ch. 14. Our position is, that the court cannot bind by an injunction, either persons, or property, situated out of the State. It has no power except as to persons, and property within the limits of the government. Bouv. Law Dic. ; *Picquet* v. *Swan*, 5 Mason, 40. The process of the court, cannot be executed out of the State.

As the court have no jurisdiction as to a part of the dam, they have none as to the whole, for it is a matter not susceptible of division. Ang. on W. C., 2. The court will dismiss a bill summarily on motion, where the want of jurisdiction appears on the face of the papers. 2 Taylor, 218. The real estate does not follow the person. The injury to the land here is only a consequence of the injury there, and cannot give jurisdiction to the court.

*Hobbs*, and *Christie*, for the orators.

In the case of *Carroll* v. *Lee*, 3 Gill & Johns., 504, the court say, " where the party defendant is within the State, and the land, or other property in contest, is beyond its limits, although the proceeding is *in rem*, we apprehend there is no want of jurisdiction in the chancellor. To enforce a decree in a case of this kind, the proceedings may be *in personam*, as well as by injunction to recover possession of the thing disputed. *Penn* v. *Lord Baltimore*, 1 Ves. Sen., 444; *Portarlington* v. *Soulby*, 3 M. & R., 104.

An objection to the jurisdiction of the court must ordinarily be taken by demurrer, when the want of jurisdiction is apparent on the face of the bill, and by plea when not apparent on the face of the bill. Story's Eq. Pl., 372, 552, § § 472, 711 ; 1 Smith's Ch. Pr., 218.

We do not deny some part of the respondent's position, as to the jurisdiction, and we admit that the court has no jurisdiction

of a trespass committed in Maine.   Some of the cases cited by the counsel have arisen, and have been decided upon the construction of particular statutes.   Such is the case of *Picquet* v. *Swan*, 5 Mason, 40.   Here the question is, whether the court has jurisdiction, a part of the property being here, and both parties living in this State.   We say that although the property may be without the State, still if the party lives here, it is enough, for the decree of the court acts *in personam.*   Story's Eq. Pl., 382 ; 2 Dan. Ch. Pr., 717.   We do not ask the court to act upon the land in Maine.

The action of the court is necessary to prevent injustice, and is comprehended within the general power given the court.   Rev. Stat., ch. 171, page 340.

The remedial power of a court of chancery, could be evaded if this power did not exist, authorizing the courts of each State to issue an injunction in a case like the present.   If a party lived in Maine, he could not be enjoined there, according to the argument of the counsel, because the property was in New-Hampshire. He could not be enjoined here because he lived in Maine.   But it is, in truth, of no consequence where the wrong is to be done. We ask only the exercise of the power of the court to restrain the respondent from going into Maine and doing us an injury. The destruction of the part of the dam there, would ruin the dam in New-Hampshire, and thus deprive us of the use of the water.

GILCHRIST, C. J.   The application now before, us is made by virtue of the provision contained in § 7, ch. 171, Rev. Stat., which authorizes the court to " grant writs of injunction whenever the same shall be necessary to prevent injustice."   Questions analogous to that now presented have often been investigated, both in England and in this country, and the principles recognized by the decisions, go far enough to authorize the court to grant the relief now prayed for.   The court are not asked to assume any jurisdiction, or exercise any control over the land in Maine, or to interfere with the laws of that State.   Nothing more is asked than that the respondent, a citizen of New-Hamp-

shire, and residing within her limits, shall be subject to her laws, and that, being within reach of the process of this court, he shall be forbidden to go elsewhere and commit an injury to the property of other citizens, situated here, and entitled to the protection of our laws.

In the case of *Penn* v. *Lord Baltimore*, 1 Ves., 444, Lord *Hardwicke* recognized and acted upon the principle, that equity, as it acts primarily *in personam*, and not merely *in rem*, may make a decree, where the person against whom relief is sought, is within the jurisdiction upon the ground of a contract, or any equity subsisting between the parties respecting property situated out of the jurisdiction. A decree was made for the specific performance of a contract relating to the boundary between the colonies of Pennsylvania, and Maryland. In the course of his judgment, Lord *Hardwicke* says : " this court, therefore, has no original jurisdiction on the direct question of the original right of the boundaries, and their bill does not stand in need of that. It is founded on articles executed in England, under seal, for mutual considerations, which gives jurisdiction to the king's courts, both in law and in equity, whatever be the subject matter." He subsequently says : " the conscience of the party was bound by this agreement, and being within the jurisdiction of this court, which acts *in personam*, the court may properly decree it as an agreement."

This case decides, that although the subject matter of a contract be land out of the jurisdiction, the boundary of the land may be settled by a decree for a specific performance of the contract. In this way a party within the jurisdiction may be compelled to do an act of justice, in relation to land out of the jurisdiction. The case is a leading one, and its principle has been extensively followed. This doctrine, however, was not first suggested by Lord *Hardwicke*. Before his time, it was well established in the court of chancery, although it had not received so elaborate an exposition in any preceding case, as in the decision referred to. In the case of *Arglasse* v. *Muschamp*, 1 Vernon, 75, the bill prayed for relief against an annuity charged upon the orator's lands in Ireland, on the ground of fraud. The re-

spondent pleaded to the jurisdiction of the court, that, the lands lying in Ireland, the matter was properly examinable there, and that the court ought not to interpose.    The Lord Chancellor said: " this is surely a jest put upon the jurisdiction of this court, by the common lawyers ; for when you go about to bind the lands, and grant a sequestration, to execute a decree, then they readily tell you, that the authority of this court is only to regulate a man's conscience, and ought not to affect the estate, but that this court must, *agere in personam,* only ; and when, as in this case, you prosecute the person for a fraud, they tell you, you must not intermeddle here, because the fraud, though committed here, concerns lands that lie in Ireland, which makes the jurisdiction local ; and so would wholly elude the jurisdiction of this court." The plea was overruled.    In the case of *Toller* v. *Carteret,* 2 Vernon, 494, the bill was to foreclose a mortgage upon the island of Sarke, and the respondent pleaded to the jurisdiction of the court, that the island of Sarke was part of the Duchy of Normandy, and had laws of its own, and was under the jurisdiction of the courts of Guernsey, and not within the jurisdiction of the court of chancery.    But it was held, " that the court of chancery had also a jurisdiction, the defendant being served with the process here, *et æquitas agit in personam,* which is another answer to the objection."    In *Lord Cranstown* v. *Johnson,* 3 Ves., 170, the master of the rolls, after commenting on some of the cases, says : " these cases clearly show, that with regard to any contract made, or equity between persons in this country, respecting lands in a foreign country, particularly in the British dominions, this court will hold the same jurisdiction, as if they were situated in England."    In *Portarlington* v. *Soulby,* 3 M. & R., 104, the bill was to restrain the respondents from suing in Ireland, upon a bill of exchange given for a gambling debt.    Upon a motion to dissolve the injunction Lord *Brougham* said : " in truth nothing can be more unfounded, than the doubts of the jurisdiction.    That is grounded, like all other jurisdiction of the court, not upon any pretension to the exercise of judicial and administrative rights abroad, but on the circumstance of the person of the party on whom this order is made, being within the

power of the court. If the court can command him to bring home goods from abroad, or to assign chattel interests, or to convey real property locally situate abroad; if for instance, as in *Penn* v. *Lord Baltimore*, it can decree the performance of an agreement touching the boundary of a province in North America; or as in the case of *Toller* v. *Carteret*, can foreclose a mortgage, in the isle of Sarke, one of the channel islands, in precisely the like manner can it restrain the party, being within the limits of its jurisdiction, from doing anything abroad, whether the thing forbidden be a conveyance, or other act *in pais*, or the instituting, or prosecution of an action in a foreign court."

The principle that a court in chancery, will exercise such a power as the orators ask should now be enforced, whenever the case is one of equitable cognizance, and the parties are within the jurisdiction, although the property may be beyond it, is as fully recognized by the courts in this country, as in England. In *Massie* v. *Watts*, 6 Cranch, 148, the question was whether the defendant, being within the jurisdiction of the circuit court, in Kentucky, could be decreed to convey lands in Ohio, and the defence was that the land lay beyond the jurisdiction of the court. *Marshall*, C. J., said, "where the defendant is liable, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of *mala fides* practised upon the plaintiff, the principles of equity give a court jurisdiction, wherever the person may be found, and the circumstance that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction."

It is said by Chancellor *Walworth*, in the case of *Mitchell* v. *Bunch*, 2 Paige, 606, that the original and primary jurisdiction of this court, was *in personam* merely. The writ of assistance to deliver possession, and even the sequestration to compel the performance of a decree, are comparatively of modern origin. The jurisdiction of the court was exercised for several centuries, by the simple proceeding of attachment against the bodies of the parties, to compel obedience to its orders and decrees. Although

the property of a defendant is beyond the reach of the court, so that it can neither be sequestered nor taken in execution, the court does not lose its jurisdiction in relation to that property, provided the person of the defendant is within its jurisdiction. By the ordinary course of proceeding, the defendant may be compelled either to bring the property in dispute, or to which the complainant claims an equitable title, within the jurisdiction of the court, or to execute such a conveyance or transfer of it, as will be sufficient to vest the legal title as well as the possession of the property, according to the *lex loci rei sitæ*.

The parties in the cause, in which these views were expressed, were foreigners, temporarily in this country. The bill stated, that the defendant had sufficient property at Carthagena or elsewhere, to satisfy a judgment which the complainant had recovered against him, and that the defendant was about to leave the State for Carthagena. The bill prayed for satisfaction of the judgment out of the property of the defendant.

Upon another application of the same principle, the chancellor held, that where the court had jurisdiction of the person, it might by the ordinary process of injunction and attachment for contempt, compel a defendant to desist from commencing a suit at law, either in that or any foreign jurisdiction. *Mead* v. *Merritt*, 2 Paige, 402. So where the person was within the jurisdiction, it was held, that the court might compel a party to execute a trust of lands in Illinois, valid by the laws of that State, or to convey the legal title according to the decree, so long as it had the power to execute its decision through the medium of the holders of the legal title. *Hawley* v. *James*, 7 Paige, 213.

In the case of *Sutphen* v. *Fowler*, 9 Paige, 280, the bill was filed for the specific performance of a contract for the sale of lands in Michigan, against the infant child of the contracting party, who at the time of his death was entitled to a conveyance of the legal title to the premises, which was subsequently made to the defendant. It was held, that the court had jurisdiction to decree the specific performance of a contract for the sale of lands in another State, where the person of the defendant was within reach of its process. and might direct a conveyance by

the infant when she should arrive at the proper age to enable her to transfer the legal title according to the laws of Michigan, and might authorize the orator to take and to retain possession of the premises until that time, if he could obtain possession of them without suit. It was also held, and that is very pertinent to the present inquiry, that in the meantime, the court might grant a perpetual injunction, restraining the defendant from disturbing the complainant in such possession, or from doing any act whereby the title should be transferred to any other person, or in any way impaired or incumbered.

This decision is in point, not only as regards the principle, but also in relation to its application to a state of facts similar to those in the case now before us. Nothing more is asked by the orators here, than that the defendant should be restrained from injuring or interfering with the property of the orators situated in Maine, and the above case of *Sutphen* v. *Fowler* is an express adjudication that he may be so enjoined. The principle is also recognized and stated, by the most eminent elementary writers. Jeremy's Eq. Jur., 557 ; Story's Eq. Jur., § § 743, 744, 899, 900.

It would be a great defect in the administration of the law, if the mere fact, that the property was out of the State could deprive the court of the power to act. As much injustice may be perpetrated in a given case, against the citizens of this State, by going out of the jurisdiction and committing a wrong, as by staying here and doing it. The injustice does not lose its quality by being committed elsewhere than in New-Hampshire, and as the legislature has conferred upon the court the power to issue injunctions whenever it is necessary to prevent injustice, it is the duty of the court to exercise that power upon the presentation of a proper case, and when it can be done consistently with the acknowledged practice in courts of equity. As the principle which is sought to be applied here, has been recognized for nearly two hundred years, we have no hesitation in holding, that the court has jurisdiction to issue the injunction prayed for.