# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-037**

**Filing Date: November 25, 2019**

**No. A-1-CA-37664**

**KAYWAL, INC.,**

> Plaintiff- Appellee,

v.

**AVANGRID RENEWABLES,
LLC, a foreign limited liability
company; BLATTNER ENERGY,
INC., a foreign corporation; and
EL CABO WIND, LLC, a foreign
limited liability company,**

> Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY
Kea W. Riggs, District Judge**

Certiorari Denied, March 5, 2020, No. S-1-SC-38096. Released for Publication October 5, 2021.

Hinkle Shanor LLP
Andrew J. Cloutier
Lucas M. Williams
Roswell, NM

for Appellee

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Earl E. DeBrine, Jr.
Elizabeth A. Martinez
Albuquerque, NM

for Appellants

## OPINION

**VANZI, Judge.**

**{1}**     We granted interlocutory appeal to review the district court's orders denying two motions to dismiss filed by Avangrid Renewables, LLC, Blattner Energy, Inc., and El Cabo Wind, LLC (collectively, Defendants). Defendants' first motion sought dismissal for improper venue; the second motion sought dismissal for failure to join the Torrance County Board of Commissioners (Torrance County) and the Commissioner of Public Lands (the Commissioner) as indispensable parties. We conclude that the district court properly denied the motion to dismiss for improper venue, because Kaywal, Inc.'s (Plaintiff) second amended complaint, which seeks monetary and injunctive relief for trespass, nuisance, and unjust enrichment, does not have as its object an interest in lands for purposes of New Mexico's venue statute. Therefore, venue is proper in Chaves County, where Plaintiff resides. For related reasons, the district court did not abuse its discretion in finding that Torrance County and the Commissioner are neither necessary nor indispensable parties. Accordingly, we affirm.

## FACTUAL BACKGROUND

**{2}**     The underlying complaint concerns Defendants' alleged trespass and nuisance in connection with development of the El Cabo wind farm (a wind energy facility) in Torrance County, New Mexico. Defendants—private companies in the wind energy business—contracted with the Commissioner to acquire a "wind lease" on state land. Waller Ranch (Waller Ranch or the Ranch), owned by Plaintiff, sits to the east of the parcel leased by Defendants. The Ranch owns a fence along its western boundary, which sits generally on the boundary line, or is slightly inset.[1] Along the northern boundary of Waller Ranch is a dirt road, intersecting U.S. Highway 285 to the east, and the leased parcel to the west. Although the Waller Ranch fence runs along the south side of the northern road, the fence is inset, such that portions of the northern road are on the Ranch property. North of the Waller Ranch property line is, largely, state trust land. The boundary between Plaintiff's land, and the state lands (to the north) was established through a Property Line Agreement (PLA) between Plaintiff and the Commissioner, dated December 11, 2001, and recorded with the Clerk of Torrance County on April 17, 2002. Plaintiff alleges that the ownership of Waller Ranch lands is further established by land purchase contracts and an affidavit and notice of possession and ownership (recorded in Torrance County), attached to the complaint.

**{3}**     According to the complaint, beginning in 2012, Defendants attempted to obtain easements and licenses from Plaintiff to access the leased land via Waller Ranch, and to locate a transmission line through Waller Ranch land. Plaintiff did not grant the requested easements or licenses. In February 2017 Defendants obtained a Right of Entry permit (ROE 2978) from the state, which provided access to the leased parcel from the west. Defendants then began construction of a transmission line on the leased parcel, parallel to the western boundary of Waller Ranch, but found that access from the west was too steep and rugged. In March 2017 Defendants applied to the State Land Office (SLO) to amend ROE 2978, in order to enable access from the east, via the northern road, although (according to the complaint) Defendants knew that some of the

---

1There are also private ranch lands to the west of Waller Ranch, through which Defendants have easements.

road was owned by Plaintiff. The Commissioner either amended ROE 2978, or deemed ROE 2978 to already grant access via the northern road. However, ROE 2978 requires the grantee to discover existing encumbrances and does not purport to grant access across private lands.

{4}     Thereafter, Plaintiff asserts, Defendants began trespassing on Waller Ranch property (both the real property and the western fence) by, inter alia, using the northern road, adding a wood-plank road on Waller Ranch land, transporting and storing materials on Waller Ranch land, disposing of soiled toilet paper on Waller Ranch land, digging holes under the Waller Ranch western fence, and installing electrical grounding systems on the western fence. Plaintiff claims that Defendants have damaged, and continue to damage Waller Ranch roads, fences, and grazing lands, and that they have removed, tampered with, or destroyed "No Trespassing" signs on the property. Plaintiff also claims that Defendants have created a nuisance by installing a grounding system on the Ranch's western fence, without permission, and locating the transmission line parallel to and near the same fence. Plaintiff asserts that this transmission line system will cause dangerous voltages and currents to be induced into the fence, causing "risk of serious injury or death to people, livestock and game." Finally, Plaintiff alleges that all of the foregoing conduct has resulted in unjust enrichment to Defendants, given the savings and revenue generated by the unlawful use of Plaintiff's road and fence. Plaintiff seeks compensatory damages, punitive damages, and an injunction prohibiting Defendants from further trespasses and nuisances on Waller Ranch property.

{5}     Defendants' answer to the complaint admits that Defendants did not seek permission from Plaintiff to use the northern road, but denies that the road is within the boundaries of Waller Ranch. Similarly, the answer admits installing electrical grounding systems on portions of the western fence but asserts that the fence is "within the transmission right of way." The answer includes an affirmative defense that a public prescriptive easement has arisen on the northern road. However, it asserts no counterclaims and attaches no competing proof of ownership or right to possess the property at issue.

## PROCEDURAL BACKGROUND

{6}     Plaintiff commenced this action in Chaves County, the county of Kaywal's principal place of business. Defendants[2] filed a motion to dismiss for improper venue, arguing that "[b]ecause the object of Plaintiff's complaint is a dispute over ownership of and access to property located in Torrance County, suit must be filed in Torrance County[,]" citing Subsection (D)(1) of New Mexico's venue statute, NMSA 1978, § 38-3-1 (1988), which provides that "[w]hen lands or any interest in lands are the object of any suit in whole or in part, the suit shall be brought in the county where the land or any

---

[2]Defendants admit that Blattner Energy, Inc. and El Cabo Wind, LLC are foreign corporations registered to do business in Española, New Mexico, and Santa Fe, New Mexico, respectively. Defendants deny that Avangrid Renewables, LLC, is "an Oregon limited liability company transacting business in New Mexico without having registered to do business in the state[,]" but do not indicate where Avangrid resides for venue purposes, nor whether it has an agent for service.

portion of the land is situate." By contrast, Plaintiff relied on Subsection (E) of the venue statute, which provides that "[s]uits for trespass on land shall be brought as provided in Subsection A of this section," (governing transitory actions), permitting such actions to be filed in the county of the plaintiff's residence, "or in the county where the land or any portion of the land is situate." However, Defendants argued that the complaint here seeks not merely damages, but also injunctive relief, and therefore Section 38-3-1(D) of the venue statute governs, citing the New Mexico Supreme Court's decision in *Jemez Land Co. v. Garcia*, 1910-NMSC-013, ¶ 18, 15 N.M. 316, 107 P. 683 (holding that, where the plaintiff sought an injunction "perpetually [restraining the defendant] from asserting title or any interest whatever in or to the lands in dispute of which [plaintiff] claims to be the absolute owner by deed[,]" an interest in land was necessarily involved in the suit), *overruled on other grounds by Kalosha v. Novick*, 1973-NMSC-010, ¶ 12, 84 N.M. 502, 505 P.2d 845.

**{7}**     In its order denying Defendants' motion, the district court noted that Defendants' answer only generally denied the complaint's assertions of ownership to the property at issue, but provided "no affirmative evidence to contradict the same." The district court also discussed *Cooper v. Amerada Hess Corp.* (*Cooper I*), 2000-NMCA-100, ¶ 23, 129 N.M. 710, 13 P.3d 68, *aff'd in part, rev'd in part on other grounds sub nom. Cooper v. Chevron U.S.A., Inc.* (*Cooper II*), 2002-NMSC-020, 132 N.M. 382, 49 P.3d 61, in which this Court reasoned that the *Jemez Land Co.* decision "was not intended to establish a damages-injunction dichotomy for venue purposes[,]" but rather, the decision distinguished between "actions the object of which is to redress tortious injury to real property (whether through damages or injunctive relief) versus actions that adjudicate title to real property." The district court observed that "[t]respass and nuisance are actions in personam[,]" for which injunctive relief may be necessary to accord complete relief, and that establishment of any disputed boundary between Waller Ranch lands and lands which Defendants were authorized to use would be ancillary to the determination of trespass and nuisance (citing, inter alia, *Sproles v. McDonald*, 1962-NMSC-071, 70 N.M. 168, 372 P.2d 122). The district court concluded that the complaint's claims of trespass and nuisance are not actions regarding land, or actions to change interests in, rights or title to land, and that "the request for injunctive relief does not change the nature of the case for venue purposes."

**{8}**     Defendants then filed a motion to dismiss for failure to join indispensable parties, arguing that the Commissioner and Torrance County are indispensable under Rule 1-019 NMRA because (1) Plaintiff's requested relief raises a boundary dispute, the resolution of which could invalidate Defendants' wind lease and their rights under ROE 2978 (rights conveyed by the Commissioner), and (2) Defendants assert a right to use the northern road via public prescriptive easement, which if found to exist, would impact Torrance County by imposing upon the County a statutory duty to maintain the road under NMSA 1978, Section 67-2-2 (1929).

**{9}**     The district court held that the Commissioner is not an indispensable party to this action. First, the court concluded that the complaint does not present an action that could result in "ceding title of state lands to a private landowner." Second, the court

found that the complaint does not present a boundary dispute between a private land owner and the Commissioner, given the PLA's resolution, as between Plaintiff and the state, of the boundary between their respective properties. The court also cited the language within ROE 2978, indicating that it does not convey any rights across encumbered lands, and requiring the grantee to conduct due diligence regarding existing encumbrances. The district court found that complete relief can be afforded among those already parties to the action; that resolution would not impair or impede the Commissioner's ability to protect state lands; and that failure to join the Commissioner will not leave Defendants subject to a substantial risk of incurring excessive or inconsistent obligations.

**{10}** With respect to Torrance County, the district court held that there was no evidence of the northern road's dedication to public use, and that there was no dispute that the northern road is a non-maintained road which has never been accepted as a public road by Torrance County. As for Defendants' argument premised on its affirmative defense that a public prescriptive easement has arisen on the northern road, the court disagreed that the finding of such an easement could obligate the County to maintain the road, because "[f]ormal county acceptance [is required] to obligate the count[y] for road maintenance and such acceptance cannot be satisfied through the common law doctrines of prescriptive acquisition or implied dedication." *McGarry v. Scott*, 2003-NMSC-016, ¶ 6, 134 N.M. 32, 72 P.3d 608. Concluding that complete relief may be accorded without the County's participation, and that any judgment rendered would not prejudice the County's right to assert control over the road via condemnation, prescription or other proceedings, the court found that the County was, like the Commissioner, not an indispensable party.

**{11}** Plaintiff then filed an unopposed motion for leave to file a second amended complaint, adding the claim of unjust enrichment, which was granted on March 19, 2018. Defendants filed a motion seeking reconsideration of the court's orders on its motions to dismiss, and/or renewing those motions as to the second amended complaint, or in the alternative, that the issues raised in the motions (venue and indispensability of parties) be certified for interlocutory review. The district court denied the motion for reconsideration, but stated that it found its prior orders regarding proper venue and indispensable parties to "involve controlling questions of law for which a substantial ground for difference of opinion exists," and held that an immediate appeal from the orders denying the motions "may materially advance the ultimate termination of this litigation."[3]

**{12}** This interlocutory appeal followed.

**DISCUSSION**

**{13}** Two issues are before us: (1) whether the object of Plaintiff's suit is "lands or any interest in lands" for purposes of New Mexico's venue statute, Section 38-3-1(D)(1), or

---

[3]The district court cited NMSA 1978, Section 39-3-3(A)(3) (1972), but evidently intended to cite NMSA 1978, Section 39-3-4(A) (1999).

whether the suit is rather one for trespass on lands and other transitory relief, falling under Subsections (A) and (E) of the same statute; and (2) whether the district court abused its discretion in failing to join Torrance County and the Commissioner as indispensable parties, and/or by failing to dismiss the complaint on the basis of their non-joinder.

## I.      Venue

## A.      Standard of Review

**{14}**    "A motion to dismiss for improper venue based on the meaning of the venue statute involves questions of law, which we review de novo." *Baker v. BP Am. Prod. Co.*, 2005-NMSC-011, ¶ 6, 137 N.M. 334, 110 P.3d 1071; *see also Gardiner v. Galles Chevrolet Co.*, 2007-NMSC-052, ¶ 4, 142 N.M. 544, 168 P.3d 116. "Venue is generally determined from the complaint and [the] character of the judgment which may be rendered thereon." *Davey v. Davey*, 1967-NMSC-002, ¶ 9, 77 N.M. 303, 422 P.2d 38.

## B.      Analysis

**{15}**    The first issue raised on appeal is whether, under our venue statute, Plaintiff's complaint has as its object an interest in lands. This requires us to interpret New Mexico's venue statute, Section 38-3-1, which provides, inter alia, as follows:

> All civil actions commenced in the district courts shall be brought and shall be commenced in counties as follows and not otherwise:
>
> A.      First, except as provided in Subsection F of this section relating to foreign corporations, all transitory actions shall be brought in the county where either the plaintiff or defendant, or any one of them in case there is more than one of either, resides; or second, in the county where the contract sued on was made or is to be performed or where the cause of action originated or indebtedness sued on was incurred; or third, in any county in which the defendant or either of them may be found in the judicial district where the defendant resides.
>
> . . . .
>
> C.      When suit is brought for the recovery of personal property other than money, it may be brought as provided in this section or in the county where the property may be found.
>
> D.      (1) When lands or any interest in lands are the object of any suit in whole or in part, the suit shall be brought in the county where the land or any portion of the land is situate.
>
> . . . .

> E. Suits for trespass on land shall be brought as provided in Subsection A of this section or in the county where the land or any portion of the land is situate.

**{16}** In construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature. *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047; *Baker*, 2005-NMSC-011, ¶ 13; *see In re Portal*, 2002-NMSC-011, ¶ 5, 132 N.M. 171, 45 P.3d 891 ("Statutes are to be read in a way that facilitates their operation and the achievement of their goals." (internal quotation marks and citation omitted)). "[I]n determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350. We give the statutory language its "ordinary and plain meaning unless the [L]egislature indicates a different interpretation is necessary." *Cooper II*, 2002-NMSC-020, ¶ 16. Yet, we also consider the provisions at issue "in the context of the statute as a whole," including its purposes and consequences. *Hedstrom*, 2013-NMSC-043, ¶ 15; *see Key*, 1996-NMSC-038, ¶ 14 ("[A]ll parts of a statute must be read together to ascertain legislative intent[,]" and "[w]e are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." (citation omitted)). In so doing, we strive "to give effect to all statutory provisions and reconcile provisions with one another." *Gardiner*, 2007-NMSC-052, ¶ 10; *see McGarry*, 2003-NMSC-016, ¶ 20 (construing the statute at issue "to avoid rendering any part of the legislation without meaning or effect" (internal quotation marks and citation omitted)).

**{17}** We are also mindful that "[t]he Legislature is presumed to know the existing common law" at the time of a given law's passage. *Methola v. Cty. of Eddy*, 1980-NMSC-145, ¶ 20, 95 N.M. 329, 622 P.2d 234. In this case, an understanding of the common law is particularly critical to a correct understanding of the statutory provisions at issue. Therefore, before construing those statutory provisions, we turn to the common law development of transitory versus local actions, particularly with respect to actions for injury to interests in property, during the relevant period.

### i. Local Versus Transitory Actions

**{18}** Under common law, all actions were originally "local," in that English juries were empaneled on the basis of the jurors' local knowledge of the persons, places, and things involved in a given lawsuit. *See, e.g.*, Fred P. Storke, *Venue of Actions of Trespass to Land*, 27 W. Va. L. Q. 301 (1921) (noting that the term "venue" originally meant "the vicinity from which the jury came"); *Livingston v. Jefferson*, 15 F. Cas. 660, 663 (C.C.D. Va. 1811) (discussing the history of local and transitory actions). Indeed, because jurors were supposed to possess personal knowledge of the facts upon which their decision would rest, it was *necessary* that venue be laid where at least some jurors would have such knowledge. *See* Carl C. Wheaton, *Nature of Actions–Local and Transitory*, 16 Ill. L. Rev. 456, 457 (1922) (describing this necessity as born of "the limitation of the powers of court procedure" (emphasis omitted)). As the law developed, increasingly requiring jurors to find facts based not on their own knowledge, but upon

witness testimony and evidence, the requirement that venue be laid locally was relaxed. *See* William H. Wicker, *The Development of the Distinction Between Local and Transitory Actions*, 4 Tenn. L. Rev. 55, 60 (1925); Storke, *supra*, at 302. Pleading practices reflected this by permitting plaintiffs to allege, for nearly all in personam actions, any convenient location in the jurisdiction as the "place" where the events occurred; this category of cases came to be called "transitory." Wicker, *supra*, at 61-62. For other, largely in rem actions, the "true place" that the facts arose continued to form the basis of venue, and these cases were denominated "local." *Id.* at 61. However, local actions also encompassed some in personam actions, such as replevin, and actions "closely connected with realty," such as suits for injury to land (e.g., trespass and nuisance) and suits to recover real property. *Id.* at 62-63; Storke, *supra*, at 303. The reasons for this were apparently traditional and associated with the above-described pleading practices and perhaps also with the necessity for local enforcement of judgments transferring possession of land. *See* Wicker, *supra*, at 62 (noting that the courts might well have applied the transitory distinction to all actions in personam, but that rules of pleading typical for actions involving a particular piece of land and old precedents led to the inclusion of cases involving injury to land as local actions); *Mostyn v. Fabrigas*, 1 Cowp. 161, 166 (K.B. 1774) (discussing that ejectment had to be effectuated by county officers, and "therefore the judgment could not have effect, if the action was not laid in the proper county"). The distinction came to be articulated as follows: if an action could have arisen anywhere, it was transitory, but if it could only have arisen in a particular location, it was local. *Livingston*, 15 F. Cas. at 664; Wheaton, *supra*, at 456.

{19}    The local/transitory distinction (sometimes called the "local action doctrine") as applied to trespass actions entered American jurisprudence in 1811, via *Livingston*, a case in which Edward Livingston, a New York citizen, sued former President Thomas Jefferson in Virginia, alleging that Jefferson was liable to him for damages in trespass, Jefferson having seized Livingston's land, located in Louisiana. 15 F. Cas. at 660. The question was whether the court in Virginia had subject matter jurisdiction over an action for trespass in Louisiana. *Id.* at 661. The court concluded that Virginia lacked jurisdiction, citing the categorization of trespass as a local action under binding precedent, and articulating general justifications for the continuation of the local action doctrine, namely, (1) to prevent distant courts unfamiliar with local property rights from interfering with title to real property, and (2) to prevent a court from issuing a judgment it has no power to enforce (e.g., a judgment transferring possession of real property lying outside of the court's jurisdiction). *Id.* at 661-62. Chief Justice Marshall (sitting as Circuit Judge) concurred, acknowledging binding precedent, but expressly criticizing the categorization of trespass, in particular, as a local action. *Id.* at 664. In Justice Marshall's view, there was no meaningful distinction between an action for breach of contract dealing with lands,[4] and one for trespass to lands, both of which may require

---

4The United States Supreme Court, Justice Marshall writing, had recently decided *Massie v. Watts*, 10 U.S. 148, 158-60 (1810), in which the Court held that Kentucky had subject matter jurisdiction over the plaintiff's suit to recover lands in Ohio, because the suit was not a local action, though the plaintiff sought an order compelling the defendant to convey the lands at issue, because the case sounded in fraud,

resolving a boundary dispute or conducting an investigation of title—yet the former was considered transitory, and the latter local. *Id.* Justice Marshall observed that categorizing trespass as a local action may also result in a right without a remedy, where (as in *Livingston*) the defendant is not subject to personal jurisdiction in the only state having subject matter jurisdiction over the action. *Id.* The true distinction between local and transitory actions, Justice Marshall reasoned, was one between in rem and in personam actions: in rem actions require that the court have jurisdiction over the *res* at issue, whereas in personam actions require only jurisdiction over the person. *Id.* (discussing with approval *Mostyn*, 1 Cowp. 161, 176 (in which Lord Mansfield commented on the difference between local and transitory actions: "the substantial distinction is, where the proceeding is in rem, and where the effect of the judgment cannot be had, if it is laid in a wrong place")). Since a trespass action is one in personam, and seeks a remedy against the defendant, Justice Marshall saw "[no] reason, other than a technical one" for the inclusion of trespass as a local action. *Livingston*, 15 F. Cas. at 664.

{20}    After *Livingston*, most states followed its common law holding, though some took up Justice Marshall's criticism as a basis to depart from precedent. *Compare, e.g.*, *Ophir Silver Min. Co. v. Superior Court*, 82 P. 70, 72-73 (Cal. 1905) (holding, following *Livingston*, that the California court had no jurisdiction over the plaintiff's suit to enjoin future trespasses by the defendant upon a mine in Nevada), *Gunther v. Dranbauer*, 38 A. 33, 34 (Md. 1897) (reasoning that "[a]ctions for damages to real property, actions on the case for nuisances, or for the obstruction of one's right of way, are, according to all the authorities, local"), *and* XXII William M. McKinney, Encyclopedia of Pleading and Practice, *Venue*, II.b. at 776-779 (1902) (collecting state common law holdings that various actions involving claims of injury to land, including trespass, are local), *with Reasor-Hill Corp. v. Harrison*, 249 S.W. 2d 994, 996 (Ark. 1952) (holding that the Arkansas court had jurisdiction over the plaintiff's claim of injury to real property in Missouri, explaining that, although *Livingston* had been followed by the majority of states, "[t]he truth is that the majority rule has no basis in logic or equity and rests solely upon English cases that were decided . . . in circumstances that are not even comparable to those existing in our Union"), *Little v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.*, 67 N.W. 846, 847 (Minn. 1896) (noting that the *Livingston* rule is "so unsatisfactory and unreasonable . . . that since that time it has, in a number of states, been changed by statute, and in others the courts have frequently evaded it by metaphysical distinctions in order to prevent a miscarriage of justice" and holding that Minnesota courts had jurisdiction over an action for damages from trespass to land in Wisconsin), *and Great Falls Mfg. Co. v. Worster*, 23 N.H. 462, 470 (N.H. 1851) (holding that the New Hampshire court had jurisdiction over an action for injunctive relief to restrain trespass on lands in Maine).

{21}    Some divergence and confusion ensued regarding whether the local action doctrine, as articulated in *Livingston*, was a jurisdictional principle, a venue principle, or both. *See, e.g.*, George Neff Stevens, *Venue Statutes: Diagnosis and Proposed Cure*,

---

contract, and trust, which actions are "sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree."

49 Mich. L. Rev. 307, 310 (1951) (noting and giving examples of the local action doctrine causing many state courts to confuse venue with jurisdiction, and discussing the various statutory provisions demonstrating the confusion); McKinney, § II.b. at 776 n. 2 (in 1902, defining, in the chapter on "Venue," a local action as "a suit maintainable in some one *jurisdiction* exclusively" and a transitory action as "a suit maintainable wherever the defendant can be found" (emphasis added)). When *Livingston* was decided, and for many years thereafter, the distinction between jurisdiction and venue was ambiguous. *See Wheatley v. Phillips*, 228 F. Supp. 439, 440 (W.D.N.C. 1964) (noting that "[n]ot until 1887 were there any significant venue requirements for civil actions in the federal courts"); 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3822 (4th ed. 2019) ("It was not until 1923 that the Supreme Court, after a period of confusing deviation, firmly reestablished the distinction that" whereas jurisdictional defects are fatal and cannot be waived, "venue defects are waivable."). Indeed, the earliest case interpreting New Mexico's venue provisions concerning trespass to lands and suits which have as their object an interest in lands does not distinguish between jurisdiction and venue. *See Jemez Land Co.*, 1910-NMSC-013, ¶ 21 (holding that suit should have been filed in the county where the land at issue was situate; because it was not, our Supreme Court agreed with the court below that "there was a want of jurisdiction" requiring dismissal); *see also Kalosha*, 1973-NMSC-010, ¶¶ 12, 24 (holding that New Mexico's venue statute is not jurisdictional, but discussing and overruling earlier cases that held otherwise, or which might be construed to hold otherwise, including *Jemez Land Co.*).

**{22}**  With respect to intra-state venue, there was increasing variation among the states with respect to whether trespass was a "local" action for venue purposes, and whether such actions had to be brought in the county where the land was located. *Compare, e.g.*, *Powell v. Cheshire*, 70 Ga. 357, 359 (Ga. 1883) (noting that an action for damages from trespass to land must be brought in the county of the defendant's residence, not where the land is located, and reasoning that suit for injunction to stay injury to real property in another county was also properly brought in the county of the defendant's residence, as it did not concern title to land for purposes of the venue statute), *and Freud v. Rohnert*, 92 N.W. 109, 109 (Mich. 1902) (interpreting Michigan's venue statute, which provided that, in an action for trespass on lands, when the defendant was not an actual resident of the county in which the land involved was located, suit could be brought in any county where the defendant could be found, but could be transferred to the venue where the land was located upon application of either party after suit was filed), *with Miller v. Kern Cty. Land Co.*, 70 P. 183, 184 (Cal. 1902) (holding that, since trespass was "a very common and easy method of trying title to real estate, and could often be substituted for an action to quiet title" in California, California's constitutional provision requiring that suits to quiet title be brought in the county where the land was situated applied to the plaintiff's trespass action, and noting that this provision was a matter of both venue and subject matter jurisdiction), *aff'd sub nom. Miller & Lux v. Kern Cty. Land Co.*, 73 P. 836 (Cal. 1903), *and Niles v. Howe*, 57 Vt. 388, 390 (Vt. 1885) (discussing Vermont's venue statute, which left "the venue in actions of trespass [on land] as it was at common law" and required such actions to be brought in the county where the land was situated). In 1902, a leading legal

commentator concluded that "substantial modifications of . . . common-law rules [of venue] are to be found in the statutes of many, if not all of the states, and in these jurisdictions the question whether actions are local or transitory is governed by statute and not by the common law." McKinney, § II.b. at 786; *see also* Stevens, *supra*, at 341-42 (surveying state venue statutes, as of 1951, by which time approximately thirty states had provisions that suits for trespass to land be brought in the county where the land is located; ten states had provisions otherwise (largely allowing suit to be brought where the defendant could be found); and fifteen had no specific venue provision covering such actions).

### ii. History of New Mexico's Venue Statute

**{23}** With this historical landscape in mind, we turn to the development of New Mexico's venue statute, which originated in the Territorial laws of 1846, providing as follows:

> Suits instituted by citation[5] shall be brought in the county in which the defendant resides, or in the county in which the plaintiff resides, and the defendant may be found; in cases where the defendant is [not] a resident of this territory such suit may be commenced in any county.

1846 N.M. Laws, Practice at Law in Civil Suits, § 4 (Kearny Code); *see Geck*, 1859-NMSC-010, ¶¶ 6-7 (noting that the English version of the code mistakenly omitted the word "not" from the last phrase of this section). This rather simple statute, permitting venue to be laid in the county of either party's residence (or, for a non-resident, in any county) and containing no distinguishing provisions for local versus transitory actions, was supplanted by a new statute in 1851. 1865 Rev. Stat and Laws, art. XII, ch. XXVII, § 7 (1851) (the 1851 Act); *see also Geck*, 1859-NMSC-010, ¶ 8. The 1851 Act provided that "[e]very person shall be sued in the county in which he lives," but set forth ten exceptions to that rule, largely mandating venue according to the location of the person, place, thing or transaction at issue. 1865 Rev. Stat and Laws, art. XII, ch. XXVII, § 7.[6]

---

5"Suits instituted by citation" simply means a lawsuit instituted by summons. *See, e.g., Black's Law Dictionary* (11th ed. 2019) (defining "citation" as, inter alia, "[a] court-issued writ that commands a person to appear at a certain time and place to do something demanded in the writ, or to show cause for not doing so"); *see also Geck v. Shepherd*, 1859-NMSC-010, ¶¶ 6, 10, 1 N.M. 346 (noting that "suits instituted by citation" refers to lawsuits).

6The text of the exceptions is as follows:

1st. A married woman when liable to be sued, shall be sued in the county in which her husband resides.

2d. When a defendant has inherited an estate, concerning which any one may wish to institute a suit, he shall be sued in the county in which the estate is situated.

3d. When a defendant has contracted to perform an obligation in a particular county, he shall be sued in the county in which he has engaged to perform the contract.

4th. When the defendant has committed some crime for which a civil action for damages may be maintained, in such case he may be sued in the county in which the crime was committed or wherever he may be found.

5th. In case the defendant may be a transient person, he may be sued in whatever county he may be found.

Although the statute contained no mention of "local" or "transitory" actions, the exceptions for suits to recover moveable property (exception 6) and suits in which lands are the object (exception 9), both of which were to be brought where the property was found, are consistent with the common law denomination of local actions. *See Geck*, 1859-NMSC-010, ¶ 8; *see, e.g.*, McKinney, § II.b. at 776-779. However, apparently considering these venue changes to have been ill-advised, the Legislature in 1853 repealed the 1851 Act, reverting to language essentially identical to the 1846 statute:

> All suits, instituted in any of the courts of this Territory, shall be brought in the county in which the defendant resides, or in the county in which the plaintiff resides, and the defendant may be found; and in case the defendant is not a resident of this Territory, such suit may be brought in any county.

1853 N.M. Laws, ch. XXIX, § 4 (the 1853 Act); *see Geck*, 1859-NMSC-010, ¶ 14 (reasoning that the exceptions in the 1851 Act were "doubtless, regarded as oppressive, and, in fact, in many instances, must have been attended with great hardship[,]" and giving examples of the considerable inconvenience worked by various exceptions). This statute, again containing no language distinguishing between local and transitory actions, was in place for the next twenty-three years.

**{24}** In 1876, the Legislature enacted a new venue statute, this time providing as follows:

> Section 1.     That all civil actions which may hereafter be commenced in the district courts, shall be brought and shall be commenced in counties as follows, and not otherwise:
>
> First, All *transitory actions* shall be brought in the county where either the plaintiff or defendant, or some one of them, in case there be more than one of either, resides.
>
> Second, Or in the county where the contract sued on was made or is to be performed, or where the cause of action originated or indebtedness sued on was incurred.

---

6th. When a suit is brought for the recovery of movable property, it shall be brought in whatever county the property may be found.

7th. In cases against guardians, curators, executors, and administrators, the parties may be sued in the county in which any such persons were appointed to any of said trusts, in the county in which the property in controversy may be found, or in the county in which the defendant may live; it being optional with the plaintiff.

8th. In cases of delinquencies or frauds by public officers, they may be sued in the county in which the fraud or delinquency occurred, or in which the defendant may be found.

9th. When lands are the objects of the suit, it should be brought in the county in which the lands are situated.

10th. When two or more persons are liable to be made defendants in the same suit, if it be in the nature of a transitory action, the suit may be brought in the county in which either of the proposed defendants may reside.

Third, Or in any county in which the defendant or either of them may be found in the [j]udicial [d]istrict where the defendant resides. . . .

Second, When the defendant has rendered himself liable to a civil action by any criminal act, suit may be instituted against such defendant in the county in which the offense was committed, or in which the defendant may be found or in the county where the plaintiff resides.

*Third, When suit is brought for the recovery of personal property other than money, it may be brought as above provided, or in the county where the property may be found.*

*Fourth, When lands or any interest in lands are the object of any suit in whole or in part, such suit shall be brought in the county where the land or any portion thereof is situate.*

*Fifth, Suits for trespass on lands shall be brought as provided in the first section of this act, or in the county where the land or any portion thereof is situate.*

Sixth, Suits may be brought against transient persons or non-residents in any county of this territory.

1875-76 N.M. Laws, ch. II. § 1 (1876) (the 1876 Act) (emphasis added). Since 1876, the statute has been amended to include, inter alia, provisions governing suits against state officers (1899 N.M. Laws, ch. LXXX, § 16); suits where the land at issue is contiguous and lies in more than one county (1951 N.M. Laws ch. CXXI, § 1); and suits involving foreign corporations as defendants (1955 N.M. Laws ch. CCLVIII, § 1). However, the provisions salient to our analysis have remained essentially intact, and are now codified as set forth in Section 38-3-1 (*see* ¶ 15 hereinabove).

**{25}**    Viewed against the backdrop of the common law, the current iteration of our venue statute incorporates the local action doctrine in a limited way. The statute refers to "transitory" actions in Subsection (A), but nowhere refers to "local" actions. Only actions the object of which are "lands or any interest in lands" must be brought in the county where the land is situate. Section 38-3-1(D)(1). Trespass actions and actions to recover personal property (both local actions at common law) may be brought as transitory actions, *or* in the county where the property at issue is located. Section 38-3-1(C), (E). This represents a clear departure from *Livingston* and its progeny. Indeed, it is uncontroversial that a suit whose object is damages for trespass on land is properly venued as provided in Subsection (E). *See Cooper II*, 2002-NMSC-020, ¶¶ 7-10. The addition of a nuisance claim seeking damages does not alter the analysis. *Id.* The question raised in this appeal is whether the presence of a request for injunctive relief requires a different outcome.

### iii. Proper Venue for Trespass and Nuisance Actions Seeking to Restrain Future Invasions

**{26}** Defendants argue that *Jemez Land Co.*, 1910-NMSC-013, ¶¶ 16-18, establishes a two-pronged test, such that if a complaint "(1) makes allegations regarding ownership of land that are denied in the [a]nswer; and (2) includes a claim for equitable relief to perpetually enjoin [D]efendant from claiming any right, title or interest in the premises or interfering with [P]laintiff's use of the premises[,]" the suit has as its object an interest in land, and must be brought under Subsection (D)(1) of the venue statute (in the county where the land is located). We are unpersuaded that Defendants' proposed two-pronged test is the holding of *Jemez Land Co.*; furthermore, such a test does not follow from the relevant precedents in our jurisprudence and would not accord with the intent of our venue statute.

**{27}** In *Jemez Land Co.*, decided in 1910, our Supreme Court applied the venue statute to a suit seeking (1) damages in trespass, and (2) an injunction that the defendant be "perpetually enjoined from claiming any right, title, or interest in or to said premises and from interfering in any way with the clearing, improving or use of said premises by said plaintiff." 1910-NMSC-013, ¶¶ 16-18 (internal quotation marks omitted). The plaintiff alleged that the defendant had been cutting trees and making a brush fence around a smaller tract of land within the plaintiff's property, and that when the plaintiff attempted to remove the fence, the defendant forbade the plaintiff from doing so. *Id.* ¶¶ 1-2. The defendant answered that he, in fact, was the owner of the smaller tract, attaching his deed, and asserting that he had been in possession of the land since 1865. *Id.* ¶ 6. The land at issue was in Sandoval County, but the plaintiff had brought suit in Bernalillo County. *Id.* ¶ 1. The defendant challenged the Bernalillo County district court's jurisdiction on the ground that, inter alia, the suit involved recovery of possession of land in Sandoval County. *Id.* ¶ 7.

**{28}** The plaintiff argued that the object of suit was to recover damages for trespass on land and, therefore, venue was proper (under the forebears to Subsections (A) and (E) of the venue statute) in Bernalillo County. *Id.* ¶¶ 13-14. Our Supreme Court held that this contention "would undoubtedly be correct if the claim for damages was the sole object of the suit[,]" but that, if the Court granted the additional injunctive relief sought in the complaint, "the [defendant] would be perpetually restrained from asserting title or any interest whatever in or to the lands in dispute of which he claims to be the absolute owner by deed." *Id.* ¶¶ 14, 18. Therefore, it was "apparent that an interest in land" was "necessarily involved" in the plaintiff's suit, within the meaning of the venue statute, such that venue was only proper in Sandoval County. *Id.* ¶¶ 18-22 (dismissing the complaint for want of jurisdiction).

**{29}** Our Supreme Court explained that the plaintiff's complaint was "in form an action of 'trespass to try title,' which action is authorized by the laws of the state of Texas, but not in this territory, the complaint herein being almost identical with the forms of complaint in actions of trespass to try title provided for by the Texas Code." *Id.* ¶ 19. Trespass to try title is a long-standing statutory cause of action in the state of Texas,

which "provide[s] by the remedy of trespass to try title a method of vesting and divesting the title to real estate in all cases where the right of title or interest and possession of land may be involved. The remedy was evidently designedly intended as broad enough and effective in its scope to embrace all character of litigation that affected the title to real estate." *Hardy v. Beaty*, 19 S.W. 778, 780 (Tex. 1892); *see also* Tex. Prop. Code Ann. § 22.001(a) (West 2019) (defining the current codification of trespass to try title as "the method of determining title to lands, tenements, or other real property"). In other words, a trespass to try title action embraces what in New Mexico would be an action to quiet title. *Beaty*, 19 S.W. 778, 780; *see also Moody v. Holcomb*, 26 Tex. 714, 719 (Tex. 1863) ("The legal effect and object of [trespass to try title] suits are solely to establish the plaintiff's and conclude the defendant's title by the judgment. And such cases do not seem to differ materially from suits to remove a cloud and quiet the plaintiff's title."); *see also* NMSA 1978, §§ 42-6-1 to -17 (1893 as amended through 1977) (New Mexico's statutory quiet title provisions); NMSA 1978, §§ 42-4-1 to -30 (1878, as amended through 1937) (New Mexico's statutory ejectment provisions).

{30}   Thus, our Supreme Court's statement in *Jemez Land Co.*, that the plaintiff's suit would have fallen under the trespass to lands subsection of the venue statute "if the claim for damages was the sole object of the suit[,]" did not limit the applicability of that subsection to actions for damages, but distinguished a trespass claim from a suit to quiet title. 1910-NMSC-013, ¶ 14; *see id.* ¶ 18 (stating that "in effect" the relief sought would have "perpetually" settled title as between the plaintiff and the defendant). An ordinary action for trespass, by contrast, does not involve title to land. *See* 77 Am. Jur. 2d *Venue* § 23 (2019); *see also McNeill v. Rice Eng'g & Operating, Inc.*, 2010-NMSC-015, ¶ 1, 148 N.M. 16, 229 P.3d 489 (holding that "trespass to real property is in tort for the alleged injury to the right of possession[, and t]herefore it is an action in personam, not in rem, and does not run with the land"). Although a trespass action may seek to enjoin future trespasses, such a judgment does not have the effect of settling title as between the parties. *Id.*; *see also Stroup v. Frank A. Hubbell Co.*, 1920-NMSC-078, ¶¶ 2-5, 10, 27 N.M. 35, 192 P. 519 (upholding, in a trespass action, an order permanently enjoining the defendant from allowing irrigation water to intrude on the plaintiff's land, reasoning that such relief is appropriate "where the acts of trespass are constantly recurring" and continuous, and where damages would be inadequate or there would arise a multiplicity of suits (internal quotation marks and citation omitted)).

{31}   Here, the judgment sought by Plaintiff is not, as in *Jemez Land Co.*, 1910-NMSC-013, ¶ 18, a suit to quiet title in disguise; Plaintiff does not seek to restrain Defendants from "asserting title or any interest whatever in or to the lands in dispute"—it seeks to restrain future trespasses on lands to which Plaintiff claims title and right of possession. The district court will only consider such relief if Plaintiff establishes the elements of trespass—including an existing legal right of possession. *See McNeill*, 2010-NMSC-015, ¶ 7. If Plaintiff fails to establish this element, any relief (including injunctive relief) would be inappropriate. This Court has also directly held that, where the relief sought is damages and injunctive relief to remedy a trespass, an order quieting title is beyond the scope of the pleadings, constituting reversible error. *See Pacheco v. Martinez*, 1981-NMCA-116, ¶ 21, 97 N.M. 37, 636 P.2d 308. To the extent Defendants suggest that the

district court here may improperly render a judgment quieting title, we do not frame decisions anticipating that courts will not follow the law.

**{32}** For related reasons, we conclude that whether a suit has as its object an interest in lands cannot depend on whether the answer to a trespass suit contests the element of rightful possession. In *Jemez Land Co.*, the defendant's dispute regarding ownership of the land at issue was relevant because the plaintiff alleged that the defendant's answer should have been stricken by the court below, and because the defendant's competing title was indicative of the real object of the suit. 1910-NMSC-013, ¶¶ 15-18. Nevertheless, we emphasize, the nature of the judgment sought in the complaint formed the basis for our Supreme Court's holding. *See id.* ¶¶ 14, 17-18. "Venue is generally determined from the complaint and [the] character of the judgment which may be rendered thereon." *Davey*, 1967-NMSC-002, ¶ 9. We see no reason why the Legislature would have (silently) anticipated or intended an exception to this rule for trespass actions, particularly when the exception would generate uncertainty, contingent as it is on whether a given defendant denies the element of rightful possession. *Cf.* Restatement (Second) of Conflict of Laws, § 6(2)(i) (1971) (recognizing that predictability and uniformity of result are important values in all areas of the law); *Safeway Stores, Inc. v. City of Las Cruces*, 1971-NMSC-052, ¶ 48, 82 N.M. 499, 484 P.2d 341 (Oman, J. dissenting) (noting that when construing a statute in accordance with legislative intent, "our purpose should be to avoid and not create ambiguity"). More substantively, an ordinary trespass action seeks to vindicate an *existing* legal, possessory interest in land, and/or to protect it from tortious interference—it does not seek to create, transfer, or revoke the interest itself. *See, e.g., Pacheco*, 1981-NMCA-116, ¶ 14 ("The gist of an action of trespass to real property is in tort for the alleged injury to the right of possession[,]" and, [t]o maintain such action, the plaintiff must have been in actual or constructive possession of the land at the time of the alleged trespass." (citation omitted)). If a plaintiff does not prevail in demonstrating the existence of a legal right of possession, the trespass claim is subject to dismissal, but *the nature of the judgment sought is not altered*.

**{33}** Accordingly, even if Defendants raise a genuine dispute regarding the boundary between state lands and Waller Ranch, such a dispute does not alter the nature of the judgment sought in the complaint. Defendants argue that the district court's resolution of this boundary dispute will "establish" interests in land, but Defendants have not brought counter-claims to establish title, possession, or any other property interest in the land at issue. Courts may determine the location of a disputed boundary ancillary to resolving a trespass claim seeking injunctive relief. *See id.* ¶ 21 (stating that where the plaintiffs sought injunctive relief from alleged trespass, "procedurally it was not error on the part of the trial court to undertake to adjudicate the location of the disputed boundary claimed by [the] plaintiffs under the court's equity jurisdiction"); *id.* ¶ 19 (citing *Sproles*, 1962-NMSC-071, and *Murray Hotel Co. v. Golding*, 1950-NMSC-014, ¶ 17, 54 N.M. 149, 216 P.2d 364). Such a threshold determination does not convert a trespass claim into one whose *object* is an interest in lands under the venue statute. *See, e.g., Edwin S. George Found. v. Allen*, 31 N.W.2d 716, 720 (Mich. 1948) (stating that where the plaintiff brought suit to enjoin the defendants from trespassing on its lands, and the

defendants disputed the location of the boundary line, determining the location of the boundary line was only incidental to the relief sought by the plaintiff, and the lower court's grant of injunction was proper). Resolving a boundary dispute in this context is only for purposes of resolving the trespass claim; it seeks to apprehend existing legal property interests, but does not create, transfer, or revoke such interests.

{34}    Here, we highlight a fundamental point: neither disputed possession nor disputed boundaries are unique to the context of a trespass suit seeking injunctive relief. Any variation on these issues might arise in a case seeking only damages as a remedy for trespass. Injunctive relief is not a separate claim, but is only available where the underlying claim is meritorious. *See, e.g.*, *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (stating that an injunction is not an independent cause of action, but a "remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed" (internal quotation marks and citation omitted)). A litigant may then seek injunctive relief where she can show that money damages are inadequate, irreparable harm is posed (in this context, the trespass is continuous or likely to recur in a serial manner), and the equities warrant such relief. *See Stroup*, 1920-NMSC-078, ¶¶ 2-5 (upholding a permanent injunction "where the acts of trespass [were] constantly recurring" and where damages would be inadequate or there would arise a multiplicity of suits); *see also Kennedy v. Bond*, 1969-NMSC-119, ¶ 17, 80 N.M. 734, 460 P.2d 809 ("Injunctions are granted to prevent irreparable injury for which there is no adequate and complete remedy at law."). In short, the elements of the trespass action itself—not the elements of injunctive relief—pose the ownership and boundary disputes asserted by Defendants.

{35}    Defendants further argue that an interest in lands is posed by the relief sought in this case because the complaint amounts to an action in ejectment. We disagree. An action in ejectment is for recovery of possession, and can be maintained only if the claimant has been ousted of possession of his or her property. *See* § 42-4-5 ("It shall be sufficient [for an action of ejectment] for the plaintiff to declare in his complaint that on some day . . . he was entitled to the possession of the premises . . . and that the defendant . . . afterwards entered into such premises, and unlawfully withheld from the plaintiff the possession thereof[.]"); § 42-4-7 ("It shall be sufficient to entitle the plaintiff to recover, to show that at the time of the commencement of the action the defendant was in possession of the premises claimed, and that the plaintiff had a right to the possession thereof."); § 42-4-11 ("If the plaintiff prevail[s], the judgment shall be for the recovery of the possession, and for the damages and costs."). Here, because the complaint alleges that Plaintiff, not Defendants, are in possession of the property at issue, the complaint does not state a claim for ejectment. *See* §§ 42-4-5, -7, and -11.

{36}    Defendants argue that, even if ouster has not been explicitly alleged, to the extent the injunctive relief requested seeks removal of the grounding system attached to portions of the western fence, such relief would amount to an ejectment, citing *Polaco v. Prudencio*, 2010-NMCA-073, ¶¶ 8, 13, 148 N.M. 872, 242 P.3d 439. However, in *Polaco*, the plaintiff alleged that the defendant took possession of a portion of the plaintiff's property through building a fence around that portion and withholding it. *Id.* ¶¶

7-8. The requested relief (permanent removal of the fence) was to permit the plaintiff to regain possession of land that had been withheld. *Id.* Here, the requested injunctive relief is not to regain possession of real property—it asks that Defendants be "prohibited from entering upon the Waller Ranch or damaging or destroying Waller Ranch property" and from "committing further trespasses and nuisances[.]" Moreover, Plaintiff clarified in argument below that, with respect to the western fence, Plaintiff seeks relief for trespass on the fence itself, not recovery for trespass on lands on the western boundary. In any event, injunction to remove an encroaching structure or thing (such as grounding systems on a fence) is an available remedy in a trespass action. *See* Restatement (Second) of Torts § 161(1) (1965) ("A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the [tortfeasor] placed there, whether or not [s/he] has the ability to remove it."); *id.* cmt. b (stating that the failure to remove such a structure, chattel, or other thing "constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land" and may "confer[] on the possessor of the land an option to maintain a succession of actions based on the theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass"); *id.* rep. notes ("In a proper case an injunction will be granted to compel the [tortfeasor] to remove from the land a structure, chattel or other thing wrongfully placed there by him.").

**{37}** Defendants' final argument focuses on our Supreme Court's opinion in *Cooper II*, 2002-NMSC-020, ¶ 9, which (according to Defendants) implicitly discussed a trespass claim seeking injunctive relief as "a claim which would implicate an interest in land" and "expressly disagreed with and overruled" this Court's analysis in *Cooper I* that an interest in land was *not* implicated by a request for such relief. We read these cases differently. In *Cooper I*, this Court reviewed whether the plaintiff's suit, which included trespass and nuisance claims, had as its object, in whole or in part, an interest in lands for purposes of the venue statute. 2000-NMCA-100, ¶ 2. Believing that the complaint sought both damages and injunctive relief, we held that the presence of a request for injunctive relief did not convert the plaintiff's trespass action into one with an interest in lands for purposes of the venue statute. *See id.* ¶ 23. Our Supreme Court affirmed, agreeing that the trespass and nuisance claims did not have as their object an interest in lands, but holding that the complaint never actually set forth a request for injunctive relief; thus, this Court's analysis on that issue was overruled as advisory. *Cooper II*, 2002-NMSC-020, ¶ 9. Although our Supreme Court remarked that it disagreed with this Court's reasoning, and based its own holding on the damages-nature of the relief requested, it did not explain which aspect of our reasoning was faulty. *Id.* ¶¶ 8-10 (stating that "[c]laims for damages do not have lands or interest in lands as their object"). In sum, the application of our venue statute to trespass actions seeking injunctive relief was not before this Court or our Supreme Court, and the *Cooper* opinions, by their very terms, cannot lead our analysis.

**{38}** Our Supreme Court's decision in *Team Bank v. Meridian Oil, Inc.*, 1994-NMSC-083, ¶ 6, 118 N.M. 147, 879 P.2d 779, however, provides guidance. In that case, the question was whether the plaintiff's claim that the defendant underpaid royalties on natural gas production in Rio Arriba and other counties, seeking damages for the same,

had as its object an interest in land for purposes of the venue statute. *Id.* ¶¶ 1, 6. Although injunctive relief was not at issue, our Supreme Court's reasoning is important: "the controlling issue is whether the royalty interest[,]" an interest in real property, "is the *object* of the suit at bar such that venue is mandatory in Rio Arriba County." *Id.* ¶ 6. Our Supreme Court then held that an interest in real property was not the object of the suit, because "[t]he *object* of the suit is *not to establish an interest in the real property* but to recover money owed by [the defendant]." *Id.* (emphasis added). In support of its holding, *Team Bank* cited, inter alia, *Rito Cebolla Invs., Ltd. v. Golden W. Land Corp.*, 1980-NMCA-028, ¶¶ 3-9, 94 N.M. 121, 607 P.2d 659, where this Court held, in a suit for damages from alleged misrepresentations in a real estate contract, that, because the "action did not affect the title to, or ownership of, the property[,]" and because neither party was a resident of the county where the property was located, venue was not proper there. *Team Bank*, 1994-NMSC-083, ¶ 6. The reasoning in *Team Bank* and *Rito Cebolla* interprets our venue statute's language in Subsection (D)(1), regarding actions which have as their object "lands or any interest in lands" as those which have ownership or possessory interests in property as their direct purpose. *See Team Bank*, 1994-NMSC-083, ¶ 6;[7] *Rito Cebolla*, 1980-NMCA-028, ¶¶ 3-9.

**{39}** On this point, we return to the statute. Around the time of the 1876 Act, the United States Supreme Court used language very similar to New Mexico's Subsection (D)(1) provision regarding suits which have as their object "lands or any interest in lands," to describe the nature of in rem jurisdiction:

> [A] proceeding in rem is one taken directly against property, and *has for its object* the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, *where the direct object is to reach and dispose of property* owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien.

*Pennoyer v. Neff*, 95 U.S. 714, 734 (1877) (emphasis added), *overruled in part, on other grounds, by Shaffer v. Heitner*, 433 U.S. 186 (1977).[8] Furthermore, the basis for Justice Marshall's criticism of his own holding in *Livingston* was that the true distinction between local and transitory actions mirrors the distinction between in rem and in personam actions, and that trespass, which seeks only in personam relief, should therefore be

---

[7]*Naumburg v. Cummins*, 1982-NMSC-086, 98 N.M. 274, 648 P.2d 313, is also cited by *Team Bank*, 1994-NMSC-083, ¶ 6, and relied upon by Defendants, but that case, although somewhat unusual, generally supports our reasoning that a suit whose object is an interest in lands seeks a judgment which directly addresses (e.g., creates, transfers or revokes) that interest. Specifically, *Naumburg* holds that a suit has as its object an interest in lands where the suit includes not only a request to rescind a real estate purchase contract but seeks an injunction that prohibits transfer of the deed to the land. 1982-NMSC-086, ¶ 5.

[8]"The effect of a judgment in an in rem or quasi in rem action is limited to the property that supports jurisdiction and does not impose" personal liability. 46 Am. Jur. 2d *Judgments* § 163 (2019). By contrast, the effect of a judgment in personam is to "impose a personal obligation on the defendant in favor of the plaintiff." *Shaffer*, 433 U.S. at 199.

considered a transitory action. 15 F. Cas. at 664. Courts rejecting the denomination of trespass as a local action have also cited the in personam nature of trespass. *See, e.g.*, *Huxford v. S. Pine Co.*, 52 S.E. 439, 442 (Ga. 1905) ("[The object of the suit] was simply to restrain the defendant from" trespassing on the plaintiff's land. "The title to the property was incidentally and collaterally involved, but it was not such a suit respecting title to land as under the Constitution is required to be brought in the county where the land lies."); *Great Falls Mfg. Co.*, 23 N.H. at 470 (holding that the New Hampshire court had jurisdiction over an in personam action for injunctive relief to restrain trespass on lands in Maine, and discussing the distinction between the court's power over in personam versus in rem actions). One federal district court explicitly reasoned that an injunction to restrain the defendants from trespassing in West Virginia did not present the problems of enforcement sometimes associated with relief relating to lands outside the jurisdiction, because in this instance, the court had in personam jurisdiction over the defendants. *Lamp v. Irvine*, 41 F. Supp. 684, 686, 691-92 (D. Md. 1941). We conclude that our Legislature also had in mind the in personam nature of trespass actions when it permitted them be brought as transitory actions under Subsections (E) and (A). This quality is not altered by the presence of a request to restrain future trespasses.

{40}    The question then arises whether the other traditional rationale for local actions—ensuring that distant courts do not confuse title to local lands—changes our analysis. We conclude that it does not. Our Supreme Court has now clarified that New Mexico's venue statute is not jurisdictional, *see Kalosha*, 1973-NMSC-010, ¶ 24, and therefore, "[w]hen a New Mexico court in a county other than the county where the land is located asserts jurisdiction" the problem of protecting "the integrity of the recording acts" and assuring "that distant litigation does not interfere with the quest for the preservation of marketable titles . . . is not acute." T.E. Occhialino, *Walden's Civil Procedure in New Mexico*, 2-18 (2d ed. 1988). "Venue relates to the convenience of litigants" and "reflects equity or expediency in resolving disparate interests of parties to a lawsuit in the place of trial[.]" *Team Bank*, 1994-NMSC-083, ¶ 8 (alteration, internal quotation marks, and citations omitted). "We also note the expansive nature of the venue statute and the broad discretion it allows plaintiffs in choosing where to bring an action." *Gardiner*, 2007-NMSC-052, ¶ 4. Thus, "[a]s a matter of convenience only," the court in the county where lands are located is preferred "if land titles may be affected." Occhialino, *supra*, at 2-19. But "where the action, though related in some way to land, will not have an impact on title, there is no need to require the action to be brought [in the county] where the land is located." *Id.*; *see also Team Bank*, 1994-NMSC-083, ¶ 6 (relying for its holding, in part, on this interpretation of the venue statute).

{41}    At least one scholar has concluded that, for all these reasons, Subsection (D)(1) of the venue statute should not be strictly construed. *See* Occhialino, *supra*, at 2-19 (meaning, in context, that the subsection should not be strictly construed to mandate that any action related in some way to land be brought under Subsection (D)).[9] We

---

9Defendants briefly argue that "[a]ny ambiguity in the venue statute should be strictly construed by the courts favorably to the rights of defendants" (citing and quoting *Team Bank*, 1994-NMSC-083, ¶ 8), the rationale being that venue provisions authorizing suit in a county other than the county of the defendant's residence should generally be given a narrow reading. But this supports our interpretation, because while

agree. Reading the statute as a harmonious whole, it follows that we do not consider Subsection (D)(1) to require that actions to restrain future trespasses be brought thereunder. Instead, we give effect to the plain meaning of Subsection (E), and conclude that the Legislature intended to permit trespass actions, including those seeking injunctive relief, to be brought as transitory actions, provided that the judgment sought does not create, transfer, or revoke an interest in property. *See Jemez Land Co.*, 1910-NMSC-013, ¶¶ 16-19; *see also Baker*, 2005-NMSC-011, ¶ 13 (noting that in construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature); *Sec. Escrow Corp. v. N.M. Taxation & Revenue Dep't*, 1988-NMCA-068, ¶ 7, 107 N.M. 540, 760 P.2d 1306 ("[W]e cannot add a requirement that is not provided for in the statute or read into it language that is not there[.]").

**{42}**   To the extent Defendants separately assert that Plaintiff's nuisance claim and request to restrain future nuisances has as its object land or any interest in land, we disagree. Defendants' brief in chief considers together the injunctive relief sought for both trespass and nuisance, but a nuisance claim (and relief available thereunder) is a distinct cause of action. Private nuisance is akin to trespass: it is an in personam action for tortious interference with one's use and enjoyment of land. However, in nuisance actions, the interference is non-trespassory. *Scott v. Jordan*, 1983-NMCA-022, ¶ 12, 99 N.M. 567, 661 P.2d 59 (citing, inter alia, Restatement (Second) of Torts § 821(D) (1979)). The conduct creating the nuisance must (in order to be actionable) be intentional and unreasonable, or unintentional and "otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities." *Id.* ¶ 12 (quoting Restatement (Second) of Torts § 822 (1979)). Here, Plaintiff alleges that, inter alia, Defendants' operation of the wind farm transmission line parallel to the Waller Ranch western fence poses a nuisance, as it will "cause dangerous voltages and currents to be induced into Plaintiff's fence causing risk of serious injury or death to people, livestock and game." Plaintiff seeks damages and an injunction to prevent further nuisance.

**{43}**   Defendants argue that, because the injunctive relief requested by Plaintiff under its nuisance claim could "divest" Defendants of their right to use the transmission line, Plaintiff's suit has as its object an interest in land under Subsection (D)(1). We disagree. First, Plaintiff denies that it seeks such sweeping relief. Second, we note that, even where a nuisance is continuing, and damages are inadequate to compensate the claimant, the claimant must show irreparable injury, and the court may separately balance the equities before concluding that injunction is appropriate. *See Padilla v. Lawrence*, 1984-NMCA-064, ¶¶ 21-23, 101 N.M. 556, 685 P.2d 964 (upholding damages award to the plaintiffs in nuisance action but concluding that equity weighed against the issuance of injunctive relief). More significantly, any relief in this context is addressed to enjoining the nuisance-causing condition or activity on a party's own property. *See id.* (concluding that the relief requested was to enjoin the defendant's

---

Subsection (D) authorizes suit in a county other than the defendant's residence (and should therefore be given a narrow reading), Subsection (E) permits venue to be laid where the defendant resides (furnishing no basis for a narrow reading). Accordingly, to the extent this principle should be applied, it weighs in favor of our analysis.

operation of a manure plant on the defendant's land); Restatement (Second) of Torts § 822 cmt. d (discussing nuisance and distinguishing actions for damages from actions for injunctive relief). While the district court here may find a continuing nuisance, and find that (for instance) Defendants should be enjoined to move the transmission line to the west, we fail to see how this relief "has as its object" Defendants' property interests. In short, the requested relief has as its object Defendants' activity on their property, not their property interests as such.

{44}    Defendants' argument also requires a doubtful reading of the venue statute. We can see no reason why the Legislature would intend for any action seeking injunctive relief for nuisance to be brought under Subsection (D)(1), but would not afford the option (as in actions for trespass, under Subsection (E)) for such claims to be brought as transitory actions. It is far more plausible that, as with trespass, the Legislature considered nuisance (an in personam tort claim) to be a transitory action; but, while the Legislature expressly included trespass as an action that could be brought under Subsection (E), it likely elected not to specify nuisance in Subsection (E) as a suit that might also be brought, as a matter of convenience, where the affected property interest is located, because nuisance involves no physical intrusion upon the land of another, and because nuisance is addressed to activity on one's own land.[10] *See Gardiner*, 2007-NMSC-052, ¶ 10 (we strive "to give effect to all statutory provisions and reconcile provisions with one another"); Occhialino, *supra*, 2-19 ("As a matter of convenience only" the court in the county where lands are located is preferred "if land titles may be affected" but "where the action, though related in some way to land, will not have an impact on title, there is no need to require the action to be brought [in the county] where the land is located."). Accordingly, we hold that the complaint does not have as its object land or any interests in land within the meaning of Subsection (D)(1) of our venue statute, and was properly filed as a transitory action under Subsections (E) and (A) of our venue statute.

## II.    Indispensable Parties

## A.    Standard of Review

{45}    We review the district court's findings regarding the indispensability of a party for abuse of discretion. *Golden Oil Co. v. Chace Oil Co.*, 2000-NMCA-005, ¶ 8, 128 N.M. 526, 994 P.2d 772; *see also C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*, 1991-NMSC-049 , ¶ 8, 112 N.M. 89, 811 P.2d 899 (citing *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70 (2d Cir.1984) for the proposition that the rule on necessary and indispensable parties "gives district court substantial discretion to weigh factors and determine whether a suit can continue without joinder, i.e.[,] it involves more of a factual than legal determination, and review is limited to abuse of discretion"). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its

---

[10]We also note that, in a nuisance case involving environmental pollution, for instance, the property where a party's nuisance-causing activity occurs (e.g., water contamination) may be in a different county than the county where the affected party is located.

ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 (internal quotation marks and citation omitted).

**{46}** "Nevertheless, even when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted). "Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Id.* (alteration, internal quotation marks, and citation omitted).

## B.    Analysis

**{47}** As a threshold matter, the Commissioner's "Lessees" and the Department of Game and Fish are also purported indispensable parties in this interlocutory appeal, but they were not included in Defendants' motions before the district court.[11] Ordinarily, where a defendant raises an indispensability argument for the first time on appeal, and where judgment has been entered below, we engage in limited review to inquire whether the allegedly indispensable party was prejudiced by the judgment entered in his or her absence. *Reichert v. Atler*, 1992-NMCA-134, ¶ 10, 117 N.M. 628, 875 P.2d 384, *aff'd*, 1994-NMSC-056, ¶¶ 10, 12, 117 N.M. 623, 875 P.2d 379. But where no judgment has yet been entered and a appellant raises the non-joinder of a party for the first time on interlocutory appeal, we will not consider the argument. *See C.E. Alexander & Sons, Inc.*, 1991-NMSC-049, ¶ 10 (discussing bases for limitations on appellate review of indispensable party arguments raised for the first time on appeal, reasoning that "when a joinder question is raised before or at trial, the court can entertain evidence regarding the missing party" whereas, on appeal, "we do not have the appropriate tools at our disposal to determine the factual predicate of a party's indispensability"); *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (holding that, in general, an issue is not preserved unless the appellant "fairly invoked a ruling of the trial court on the same grounds argued in the appellate court" (internal quotation marks and citation omitted)). Here, since the matter has not reached trial on the merits, nothing prevents the district court from considering purported additional indispensable parties and admitting evidence on the issue. *See C.E. Alexander & Sons, Inc.*, 1991-NMSC-049, ¶ 10 (noting that the court "normally should consider joinder in the first instance" at trial). For these reasons, we address Defendants' argument on appeal only as to the Commissioner and Torrance County.

---

[11]Although Defendants' application for interlocutory appeal added these two parties to the indispensability argument on appeal, Defendants did not include them in the motions before the district court, and they were not included in the district court's order or findings pursuant to Section 39-3-4(A).

**{48}** The determination of whether a party is indispensable is governed by Rule 1-019, which requires a three-part analysis. First, the district court must determine whether the party at issue is necessary under Rule 1-019(A). That subsection provides as follows:

> A.     Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if:
>
> (1)     in his absence complete relief cannot be accorded among those already parties; or
>
> (2)     he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
>
> (a)     as a practical matter impair or impede his ability to protect that interest; or
>
> (b)     leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

Second, if the party is deemed necessary under Rule 1-019(A), the court must determine if joinder is possible. *See Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 39, 132 N.M. 207, 46 P.3d 668. Finally, if the party cannot be joined, the court must decide whether "in equity and good conscience" that party is indispensable to the litigation. *Id.* (quoting Rule 1-019(B)). If the party is indispensable, the court dismisses the case. *Id.* In reaching this decision, the court should consider the following factors set out in Rule 1-019(B):

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Here, both Defendants and the district court conflated the factors under the first and third steps of the analysis (i.e., the factors in Rule 1-019(A) and (B), respectively). However, the district court's findings make apparent that it did not find either the Commissioner or Torrance County to be necessary parties under Rule 1-019(A), and therefore we need not address the remaining factors under Rule 1-019(B).

**{49}** Defendants first argue that the district court abused its discretion with respect to the need to join the Commissioner, because the court wrongly concluded that "a boundary dispute does not exist, and that title and ownership of the land are not at issue." According to Defendants, not only did Plaintiff concede that the northern and western boundaries of Waller Ranch are disputed, but the PLA between Plaintiff and the Commissioner is invalid. Thus, Defendants argue, as in *King v. UU Bar Ranch, Ltd. P'ship*, 2009-NMSC-010, 145 N.M. 769, 205 P.3d 816, the Commissioner, trustee of the state land at issue, must be present for the establishment of the boundaries of those lands.

**{50}** *King* was a quiet title action regarding ownership of a road which "historically had provided public access to thousands of acres of state trust lands." *Id.* ¶ 1. Therefore, our Supreme Court's holding that the boundary between the private ranch owner and the state trust lands in that case could not have been "reestablished without, at the very least, the presence in court of the state agencies which are the trustees of those very state lands" was in the context of an action whose purpose was to establish ownership—a purpose clearly adverse to the state's interests in that case. *Id.* ¶ 48. Defendants also cite *Hancock v. Nicoley*, 2016-NMCA-081, ¶ 19, 392 P.3d 175, in which this Court held that "[g]enerally, *in a boundary dispute*, the owners of adjoining lands and all persons having a direct interest in the result of a proceeding, legal or equitable, to establish boundaries[,] are necessary or indispensable parties, for . . . title to the land . . . and the determination of a common boundary line cannot be established otherwise." (Emphasis added) (omission, alteration, internal quotation marks, and citation omitted). But *Hancock* was, as the quote suggests, also a case in which "the complaint requested an adjudication of boundaries[,]" and the plaintiff sought a declaration of her legal right to the contested area by virtue of adverse possession or prescriptive easement. *Id.* ¶ 4.

**{51}** Here, by contrast, as the district court correctly found, establishing the ownership of the northern road is not the purpose of the litigation. Moreover, the boundary asserted by Plaintiff is the one the state agreed to through the PLA; thus, the district court did not abuse its discretion in finding that the "Commissioner and Plaintiff have no boundary dispute as to the land in question." It is Defendants who dispute the northern boundary.[12] Defendants contend that the PLA is actually legally invalid, and that the district court "never even considered" this when resolving Defendants' motion. But Defendants did not include, in the "Undisputed Material Facts" in support of the motion to the district court, any argument or evidence that the PLA is legally invalid. For purposes of its venue determination, the district court could properly have concluded that the PLA constitutes prima facie evidence of the agreement between Plaintiff and the state regarding the northern boundary, as alleged in the complaint, and we do not

---

[12]Defendants vigorously argue that the western boundary is also disputed, and that the district court erred in holding that the PLA resolves the location of that boundary. We agree that the PLA does not address the western boundary—but Plaintiff claims trespass on the western fence as Plaintiff's personal property, not trespass on lands along the western boundary. Accordingly, the district court did not abuse its discretion in concluding that there is no dispute about the location of the western boundary—and in any event, an ancillary determination regarding a disputed boundary does not alter the purpose of Plaintiff's lawsuit, or the ultimate finding that this litigation does not implicate state interests.

consider arguments and evidence not raised in the district court. *See Benz*, 2013-NMCA-111, ¶ 24. In any event, if Plaintiff proves the validity of the boundary established in the PLA, the boundary will be precisely where the state agreed it was located; if Defendants successfully dispute the legal validity of the boundary set forth in the PLA, and the district court concludes that Waller Ranch does not envelop any portion of the northern road, Plaintiff's complaint will be dismissed. Neither of these results would be akin to the prospective result in *King*: ceding public land to private ownership. 2009-NMSC-010, ¶ 48. Indeed, for all the reasons set forth in the venue analysis above, a judgment on Plaintiff's trespass claim will not create, transfer, or revoke any state property interest.

**{52}**    Defendants also argue that the district court erred in concluding that Plaintiff's lawsuit does not impair or impede the Commissioner's ability to protect or exercise dominion over state lands. Defendants assert that the Commissioner's authority is implicated because, if the district court grants the relief sought by Plaintiff, the rights granted by the Commissioner through the wind lease and ROE 2978 will be eviscerated. Defendants rely on *State Game Commission v. Tackett*, 1962-NMSC-154, ¶¶ 4-5, 7, 71 N.M. 400, 379 P.2d 54, in which the plaintiff, a lessee of the Commissioner, alleged that an easement granted by the Commissioner for hunting purposes was illegal and sought to enjoin the State Game Department from authorizing licensees to hunt on the land at issue. There, our Supreme Court held that the Commissioner was an indispensable party, applying the following test from *Swayze v. Bartlett*, 1954-NMSC-019, ¶ 24, 58 N.M. 504, 273 P.2d 367:

> If the controversy involves a question concerning the legality of a state lease, the eligibility of the lessee thereunder, the matter of performance of the lease, reservations, if any, in the lease, or a matter of public policy requiring passage thereon by the [Commissioner], then the [C]ommissioner is not only a necessary party, but is an indispensable party.

*Tackett*, 1962-NMSC-154, ¶¶ 7-8. Because Tackett's suit called into question the legality of the Commissioner's easement to the State Game Department, and because a matter of great public concern was posed by the Commissioner's right to grant such easements to another state department, our Supreme Court held that the Commissioner was an indispensable party. *Id.* ¶¶ 4, 15-16.

**{53}**    Here, the district court concluded that Plaintiff's claims do not challenge (much less invalidate) any state easements or leases because neither the wind lease nor ROE 2978 purport to grant rights to invade private lands. In reaching this conclusion, the district court relied upon (1) ROE 2978's requirement that Defendants "contact the [S]urface Lessees" before commencing the wind farm project; (2) ROE 2978's caveat that "[t]he granting of this permit does not allow access across private lands"; (3) the wind lease provision rendering all uses permitted therein "subject to the rights of any pre-existing leases or other encumbrances" (quoting the Bid Packet Form of Lease ¶ 2.2.1); and (4) Defendants' agreement, through the terms of the wind lease, that they

had conducted their own "due diligence search of Land Office, County and other pertinent records to determine all existing encumbrances on the Leased Premises" (quoting the Bid Packet Form of Lease, ¶ 5.14). In light of these provisions, and the Commissioner's lack of authority, in any event, to convey a right of entry to land not belonging to the state, the district court determined that Plaintiff, through its suit, "attempts to protect only the rights purchased from the Commissioner." We also note that, although Defendants referred the district court to the SLO Geographic Information System (GIS) map as demonstrating the state's intent to grant an easement over Plaintiff's land, that map contains a disclaimer that the map is intended for illustrative purposes only and that the user "is responsible for verifying information . . . through independent research of official documents." Moreover, there is no evidence in the factual record to suggest that Plaintiff's requested relief would preclude Defendants from continuing with the wind farm project, such that the larger purpose of the wind lease or ROE would be compromised. For this reason, we see nothing in the record requiring a conclusion that the Commissioner's participation is necessary as a matter of public interest.

**{54}** On appeal, Defendants cite additional cases (not presented to the district court) to support their contention that Plaintiff's suit implicates the Commissioner's authority over state lands, but these cases are distinguishable and do not alter our analysis. In *State for Use of Walker v. Hastings*, 1968-NMCA-046, ¶¶ 1-9, 14, 79 N.M. 338, 443 P.2d 508, the Commissioner was an indispensable party where the plaintiffs sought enforcement of a construction-related contract with the Commissioner, which was admittedly ambiguous on the question at issue, and the plaintiffs contended that the Commissioner had no right to authorize the defendants to remove materials to which the plaintiffs had title. Plaintiff's suit here does not seek to enforce an ambiguous contractual term against the Commissioner, nor does it challenge the Commissioner's authority over state lands. In *Elephant Butte Irrigation District of New Mexico v. Gatlin*, 1956-NMSC-030, ¶¶ 1, 30-39, 61 N.M. 58, 294 P.2d 628, the United States was an indispensable party where the plaintiffs sued Department of Interior officials in their individual capacities for diverting water to irrigate the Bosque del Apache National Wildlife Refuge, owned by the United States, and where there was a factual finding that granting the requested injunctive relief would render impossible the United States' operation of the Refuge. No analogous showing (i.e., that the judgment sought by Plaintiff would effectively thwart the Commissioner's activities) has been made here.[13]

**{55}** For all these reasons, the district court did not abuse its discretion in concluding that the Commissioner is not a necessary party.

**{56}** Defendants argue that district court also erred in concluding that Torrance County is not an indispensable party. In the motion to the district court, Defendants argued that, if they prevail on their affirmative defense that a public prescriptive easement has arisen on the northern road, the County will be impacted through its statutory duty to maintain public highways (citing Section 67-2-2). Defendants contend

---

13We do not address Defendants' arguments concerning Plaintiff's unjust enrichment claim, as these were not raised in the district court. *See Benz*, 2013-NMCA-111, ¶ 24.

that, although the district court cited *McGarry*, 2003-NMSC-016, for the proposition that formal county acceptance is required for a public prescriptive easement to give rise to an obligation for the County to maintain a public highway, the holding in that case was "confined to roads dedicated under the Subdivision Act" and did not address the question of necessary or indispensable parties. According to Defendants, New Mexico courts have squarely held that a public road may be created by prescription, and that a county is a necessary and indispensable party to a suit seeking a declaration that a road is a public road, citing *Percha Creek Mining, LLC v. Fust*, 2008-NMCA-100, ¶¶ 3-6, 144 N.M. 569, 189 P.3d 702, and *Dutton v. Slayton*, 1979-NMSC-031, ¶¶ 6-7, 92 N.M. 668, 593 P.2d 1071.

**{57}** We are not convinced. Defendants do not contest the district court's finding that there is no evidence of the northern road's dedication to public use under NMSA 1978, Section 3-20-11(1965), and NMSA 1978, Section 47-6-5 (1995), and that there is no dispute that the northern road is a non-maintained road that has never been accepted as a public road by Torrance County. While *Dutton* acknowledges that public roads may arise by prescription, it does not address whether maintenance duties may also be imposed on a county without formal acceptance. 1979-NMSC-031, ¶ 6. Our Supreme Court's subsequent holding that formal county acceptance is required before a county's maintenance obligations are implicated was in part grounded in the Subdivision Act (NMSA 1978, §§ 47-6-1 to -29 (2005)), but the Court separately reasoned that "even setting aside the Subdivision Act," there is "no authority for extending the theories [of prescriptive easement or implied dedication] to create public maintenance obligations . . . based on . . . activity by members of the general public." *McGarry*, 2003-NMSC-016, ¶ 19 (agreeing that "implied acceptance is best understood as a shield and not a sword, to prevent others from denying the public use or access, but not as swords against a public entity for purposes of imposing public obligations" (alteration and internal quotation marks omitted)). And this Court's statement in *Percha Creek*, that the declaration of the road as public would, in that case, impose duties on the county, rendering it an indispensable party, was in the context of a declaratory judgment action seeking to have a particular county road declared public, where no argument regarding formal acceptance was apparently raised. 2008-NMCA-100, ¶¶ 3-14.[14] Here, where Defendants assert the existence of a public prescriptive easement by way of affirmative defense, even if Defendants succeed (using prescriptive easement as a "shield"),[15]

---

[14]The plaintiff in *Percha Creek* alternatively sought establishment of the road as public by way of prescriptive easement, but it appears virtually no argument was presented as to this issue. 2008-NMCA-100, ¶ 17 ("[W]ithout a more detailed argument than we have here, we must conclude that a declaration of a prescriptive public easement would impact the [c]ounty in the same way"). Because the formal acceptance argument was not raised in that case, and the Court did not address the holding in *McGarry*, we follow *McGarry*.

[15]We say "even if" because, although Defendants contend that they provided "ample evidence" to the district court "supporting their assertion that the road is public," the photographs and affidavit submitted by Defendants do not even approach a showing, by clear and convincing evidence, that the public has used the northern road in an "open, uninterrupted, peaceable, notorious, and adverse manner, under a claim of right, and continued for a period of ten years with the knowledge, or imputed knowledge of the owner." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 9, 133 N.M. 50, 61 P.3d 176 (alteration, internal quotation marks, and citation omitted).

such a finding could not be used as a "sword" against Torrance County absent formal acceptance by the County. *See McGarry*, 2003-NMSC-016, ¶ 19.

**{58}** Accordingly, the district court did not abuse its discretion in concluding that Torrance County is not a necessary party.

**Conclusion**

**{59}** We affirm the district court's denial of Defendants' motion to dismiss for improper venue because we hold that the Legislature intended, through Subsections (E) and (A) of our venue statute, to permit trespass actions, including those seeking injunctive relief, to be brought as transitory actions, provided that the judgment sought does not create, transfer, or revoke an interest in property. We also affirm the district court's denial of Defendants' motion to dismiss for failure to join indispensable parties, because the district court did not abuse its discretion in concluding that neither the Commissioner nor Torrance County are necessary parties in this case.

**{60} IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**CYNTHIA A. FRY, Judge Pro Tempore**